UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

FILED
DEC 30 2011



| | | |
|---|---|---|
| SHOSHANA TRUST, ET AL,<br>　　　　Appellants, | §<br>§<br>§ | |
| vs. | § | No. MO-11-CV-043-HLH |
| MICHAEL RALEIGH, ET AL,<br>　　　　Appellees. | §<br>§<br>§ | |

## APPELLANT BRIEF


                                        Israel Grossman
                                        508 Avenue L
                                        Brooklyn, New York 11230
                                        Telephone: (718) 252-7747
                                        Fax:  (718) 253-4968
                                        psol@verizon.net

The instant memorandum of law is submitted on behalf of appellant Israel Grossman in response to a brief filed by appellee Thomas E. Kelly pursuant to a directive of this Court dated November 28, 2011. At the outset, it is respectfully submitted that the issues addressed herein are also material and relevant to the disposition of claims brought by Appellants Lothian Cassidy, LLC, Shoshana Trust, Anna Meisher Pension Plan, YG Trust, Akberali Khakee Pension Plan, Pension Solutions, 731, 895 866, LLC, ("Capital One National Association ["Northfork"]Claimants), Listokin Family Trust, Shorivger Trust, ("BPZ Claimants"); Akberali Khakee Pension Plan, Israel Grossman, ("Webb Claimants"); MYG Trust, Herzberg Family Trust, YYSD Trust, Feinberg Family Trust, Spitzer Family Trust, Moses Family Trust, Brenda Crayk, Hirshberg Family Trust, JG Trust, S. Pollak Audiological P.C. Profit Sharing Plan; ("Put Exercise Claimants"), Israel Grossman ("Casselman Well And Compensation Claimant"), Jacob And Miriam Dekelbaum, YS Trust, Shoshana Trust, Israel Grossman (Big Lake Claimants"), that were dismissed by the Court on procedural grounds only, by orders filed May 19, May 20, and November 23, 2011.

It is respectfully submitted that the orders of dismissal are interlocutory and, being non final, are subject to revision pursuant to 28 USC 54(b); <u>Brown v. Mississippi Valley State University</u>, 311 F.3d 329 (5th Cir. 2002); <u>Filebark v.. United States Department of Transportation,</u> 555 F.3d 1009 (D.DC 2009)

Counsel has been retained to represent the appellants other than Israel Grossman and reserves their rights to seek revision of the orders of dismissal against all defendants.

Furthermore, it must be noted that Mr. Kelly's brief is the first appearance he has made in the instant matter. He neither appeared nor answered when the matter was pending is state court,

nor has he appeared subsequent to removal. As such, Mr. Kelly has defaulted and waived any right to appear in the instant matter at this late date.

In any event, it is respectfully submitted that Mr. Kelly is judicially estopped from asserting his current position as set forth in his brief. By order signed December 15, 2011, the bankruptcy court approved a compromise and settlement of certain claims between the reorganized debtors and two insurance carriers (King, J.). The order approved a settlement and release agreement between the parties of claims brought against the reorganized debtors for indemnification and payment of expenses including but not limited to payment of attorneys' fees, with respect to defense of the instant action. See December 15, 2011 order annexed as Exhibit A

One of the claimants seeking such payment was Mr. Kelly (see Exhibit A). By seeking such payment, Mr. Kelly's attorney had to take the position that the Reorganized Debtor has no post confirmation fraud claims against Mr. Kelly that would preclude his entitlement to Officer and Director ("D&O") coverage. This is completely inconsistent with his present pro-se position that the instant claims of appellants are derivative of the bankruptcy estate's exclusive right to pursue fraud claims against him that are excluded from D & O coverage. By participating in the settlement and release agreement, Mr. Kelly asked the bankruptcy court to make the December 15, 2011, order which it did.

It is respectfully submitted that by asserting a position to bankruptcy court which was in total contradiction to the position he is now asserting before this Court, Mr. Kelly is judicially estopped from asserting his present position (see In the Matter of Coastal Plains, Inc., Debtor, 179 F. 3d 197 (5th Cir. 1999)); *see also* FCR Guardian Trust v. Lothian Oil, Inc 7:09-cv-071(D.W.D. Tex. 2010) aff'd 10-50764 (5th Cir. 2011))

2

In any event in his brief, Mr. Kelly attempts to establish that appellants' claims are derivative claims of the bankruptcy estate and therefore the bankruptcy court was not precluded from disposing of same by the Supreme Court's decision in <u>Stern v. Marshall,</u> 131 S.Ct. 2594 (2011). In attempting to establish his position in this regard, Mr. Kelly makes reference to isolated portions of the records of earlier proceedings. Unfortunately, Mr. Kelly selectively set forth only parts of the records, omitting essential portions thereof.

Mr. Kelly omits the Order of this Court affirming the bankruptcy court determination that pursuant to 11 U.S.C. 1144 the Reorganized Debtor no longer had any right to contest fraudulent conveyances by the Debtor to the Belridge Group or any other non-debtor third party, once more than 180 days elapsed since the date of the plan confirmation. The Order also held that the bankruptcy liquidation confirmation did not preserve claims by the Reorganized Debtor against non-debtor third parties, <u>*Anti-Lothian Bankruptcy Fraud Committee v. Lothian Oil, Inc.*</u>, 7:10-cv-02 (D.W.D. Tex 2011). Mr. Kelly now asserts the inconsistent position that even now, more than 180 days post-confirmation, the Reorganized Debtor <u>did</u> retain the right to contest fraudulent conveyances by the Debtor to the Belridge Group or other third parties. Furthermore, Mr. Kelly omits an agreement approved by the bankruptcy court by Order dated December 8, 2008 holding that in consideration of the appellees capping their $11 million claims against the Debtor at $375,000, the appellants maintained the right to pursue their claims against any third party, including Kelly. (Exhibit B). The Agreement would be meaningless if such claims against third parties could be excluded as being exclusive estate property

Moreover, of particular concern was Mr. Kelly's omission of the finding by the District Court for the Eastern District of New York (Vitaliano, J.) that, "the plaintiffs' (appellants') action does not arise under title 11 because it is based upon contract and tort claims arising under

3

state law, none of which require that any "proposition of bankruptcy law… be established for plaintiffs to prevail" "or that implicate any provision of the bankruptcy code for plaintiffs to prevail" (Lothian Cassidy v. Bruce Ransom et al., 428 B.R. 555, 559).

It is respectfully submitted that Judge Vitaliano's finding in this regard was the first judicial determination regarding the nature of appellants' claims. Such determination, constituting resolution of a question of fact and or law, precludes the subsequent litigation of the issue in a subsequent proceeding under the doctrine of collateral estoppel (see Allen v. McCurry, 101 S.Ct. 411, 414 (1980)).

The determination of the nature of appellants' claims is the lynch pin as to whether the bankruptcy court has authority to resolve them. In the instant matter Judge Vitaliano found that appellants' claims are independent of the bankruptcy proceeding. Such finding is overwhelmingly supported by the facts of the matter. For example, the claims of plaintiffs Listokin Trust and Shorivger Trust[1] brought in New York State Supreme Court in Kings County against Mr. Kelly were that Mr. Kelly and his partner Bruce Ransom solicited $360,000 from these plaintiffs for their newly created company, Lothian Oil, Inc. in consideration of an agreement that if Lothian Oil, Inc. did not acquire certain Western Texas oil lease property and certain financing, which it did not, then these plaintiffs would receive 300,000 shares of publicly traded BPZ stock ($21 per share at time of demand) that Kelly and Ransom assured they transferred to Lothian to fund this guarantee. See agreement to purchase BPZ (formerly NAVIDAC) stock annexed hereto (Exhibit D).

---

[1] Listokin Trust and Shorivger Trust had assigned their claims to Israel Grossman (Exhibit C), who was authorized by this Court to pursue his individual claims in this action, both before and after this Court approved .plaintiffs' attorney's discontinuing her representation of her clients in this matter, requested before this Court reversed as an abuse of discretion, the over $1 million contempt penalties imposed against her by the bankruptcy court.

4

Mr. Kelly was also sued by plaintiffs in the New York State Kings County action for his role in fraudulently transferring assets of non-debtor LEAD II that negatively impacted plaintiffs ability to collect their judgment against LEAD II. Plaintiffs claims may be derivative to LEAD II's claims against Kelly and other parties responsible for the fraudulent conveyance of LEAD II property. However, this Court has held that LEAD II is not a debtor and that plaintiffs' right to pursue their claims in Supreme Court New York County against LEAD II property that does not belong to the Reorganzied Debtor, cannot be enjoined.7:10-cv-111 This Court has rejected claims by Beckham, Kelly and other defendants, that plaintiffs should be enjoined from pursuing that property, the Reorganized Debtor claims it did not own.[2] Nor did the Reorganized Debtor have any property right to Plaintiffs' claims against third parties. For example, Northfork Bank, a New York corporation, was sued for having improperly allowing plaintiffs checks made payable to third parties to be cashed by the Debtor. It is the plaintiffs who wrote the checks[3] who have the claim against Northfork Bank and not the Reorganized Debtor, who received a General Release from both plaintiffs and the Reorganized Debtor.

It is respectfully submitted that since Judge Vitaliano has already made a determination of the nature of appellants' claims, this Court is precluded, under the doctrine of collateral estopple, from relitigating same (see Allen, *supra*).

It must be noted that in describing the claim in question in Stern, the Supreme Court stated that the claim, "in no way was derived from or dependant upon bankruptcy law" (Stern, *supra* at 2618). The Supreme Court's language is remarkably similar to the language Judge Vitaliano used to describe appellant's instant claims (see Lothian Cassidy, *supra* at 559).

---

[2] 7:10-cv-111 Defendant's appeal of this Court's reversal of the injunction is pending in the Fifth Circuit.

[3] Khakee Pension Plan, Jan Arnett, and Lothian Cassidy LLC (an entity whose managing member is Israel Grossman), and each of its members, have assigned their claims against Capital One and other entities, to Israel Grossman individually. The assignments were previously submitted to this court and are available upon request.

5

The Texas bankruptcy courts have recognized that they have no authority to adjudicate a state law dispute to final judgment if the action "in no way derives from or is dependent on bankruptcy law.".(See In re Legal Xtranet, 2011 WL 3236053 (Bank. W.D. Tex. 2011). See also In re Yazoo Pipeline Co., L.P., 2011 WL 4002960 (Bank. S.D. Tex 2011)). The longstanding law in the Fifth Circuit is that non-debtors can pursue their post-confirmation claims against third party non-debtors who did not file for bankruptcy protection and were not specifically released by any confirmation Order. In re Zale, 62 F.3d 746 (5th Cir. 1995)

Pre-Stern, both this Court and the Second and Fifth Circuit position was that the bankruptcy court's Order not to mandatorily abstain constitutes an interlocutory order. Post-Stern a refusal to mandatorily abstain has properly been treated as a final appealable order, (*see* In re Schmidt, 453 B.R. 346 (8th Cir. Bank. App. Panel 2011). In Schmidt, the Eighth Circuit specifically found that it had jurisdiction to review an appeal of a district court refusal to remand a common law state action. The Eighth Circuit went on to reject the notion that 28 U.S.C. 157 authorizes bankruptcy courts to make final determinations of a common law state action. "That is so regardless of whether the matter can be fitted into one of the enumerated examples in 157(b)(2)." In the instant matter, the bankruptcy court has since stated that it cannot take any further action in this case until its post-Stern authority is determined. At a status hearing held on October 12, 2011, the recommendation made by the bankruptcy court judge in this case, was that appellants should request that the district court withdraw its reference in light of *Stern*'s rejection of bankruptcy court jurisdiction to make final determinations. See annexed October 12 hearing transcript.(Exhibit E). Plaintiffs request for a jury trial of its common law claims against third parties, can also best be accommodated by remand to state court.

6

Post-Stern cases have held that common law fraudulent conveyance and even malpractice claims against attorneys for the debtor or former officers and directors, cannot be finally determined by a bankruptcy court. (*see* In re Mandel, 2011 WL 4599969 (Bank. E.D. Tex 2011); *see also* In re Bearing *Point, Inc.*, 453 B.R. 486 (S.D.N.Y. 2011)). In Bearing Point, Judge Gerber boldly admitted that he was wrong when he believed pre-Stern that he had authority to adjudicate fraud claims against the debtor's former officers and directors who, as in this case, were not released from fraud claims by the confirmation order.

Post-Stern case law holds that there is no statutory authority under 28 U.S.C. 157(b) or 157(c) or any other statute that purports to authorize adjudication of common law state claims by a non Article III bankruptcy court (see In re Edra D. Blixseth, 2011 WL 3274042 (Bank D.Mont. 2011), See In re Southwest Sports Center, 2011 4002559 (Bank N.D. OH 2011); See also In re Silka Enter, 2011 U.S. Dist. Lexis 90243, at 3-8 (D.P.R. Aug. 12, 2011); In re Fairfield Sentry Ltd. 2011 WL 4359937 (D.C. S.D.N.Y. 2011).

Even if the fraud claims against the third party non-debtors in this case are core claims, the bankruptcy court lacks constitutional authority to hear the claims. Rather than being a factor that formerly weighted against withdrawal of the reference, the "core" label under 28 U.S.C. 157(b)(2) is either irrelevant to fraud or other common law claims or actually supports withdrawal because of the jurisdictional limitations after the Stern ruling. (In re Southwest Sports Center, Inc., 2011 WL 4002559 (Bank. N.D.Ohio 2011); In re Teleservices Group, Inc. , 2011 WL3610050 (Bktcy, W.D. Mich, Aug. 17, 2011)). Judge Jeffrey Hughes' comprehensive decision in Teleservices includes a 26 page detailed analysis of the impact of Stern. Judge Hughes found that without constitutional authority a court may not, under any circumstances take any action with respect to a matter and therefore, objections to any action taken without

7

such authority cannot be waived. Judge Hughes concluded that the only conceivable way the bankruptcy court could be authorized to finally resolve common law actions is if the parties consented to binding arbitration with the non Article III bankruptcy court judge acting as arbitrator rather than judge. Appellees do not claim that there was any such consent by Appellants. Post-<u>Stern</u>, the appropriate course with respect to fraud or other common law claims, even if assumed to be core, is to withdraw the reference to the bankruptcy court that has no constitutional authority to enter a final judgment. (<u>In re AIH Acquisitions, LLC</u>, 2011 WL 4000894 (D.C. N.D. Tex 2011)).

Kelly claims that since this Court found that it was not an abuse of discretion for the bankruptcy court to make an exception to the Anti-Injunction Act to enjoin one of plaintiffs' state law actions, then as a matter of law the bankruptcy court can make an end run around its lack of constitutional authority to resolve common law state claims. .However, the Supreme Court has since rejected as a matter of law, the overly broad application of the "relitigation" exception to the Anti Injunction Act that was relied on to justify removal of this case to the Western Texas bankruptcy court for final determination of a common law New York state action. (<u>Smith v. Bayer</u>, 131 S.Ct. 2368 (2011); <u>Thorogood v. Sears, Roebuck & Company</u>, 131 S.Ct. 3060 (2011) quoting holding in <u>Bayer</u> that "a court does not usually get to dictate to other courts the preclusion consequences of its own judgment" 131 S.Ct. at 2375, See also, <u>Fharmacy Records v. Nassar</u>, 2911 WL 2847602 (D.C.E.D.MIch.2011); <u>American Medical Association v. United Healthcare Corporation,</u> 2011 WL 5386347 (D.C.S.D.N.Y. 2011)). The only other potential exception, "to aid the jurisdiction of the court" is also now narrowly interpreted post-<u>Bayer</u>, <u>Estate of Brennan v. Church of Scientology Flag Service Organization</u>, Inc. 645 F.3d 1267 (11th Cir. 2011). <u>Brennan</u> also held that the abuse of discretion standard applied by the

8

district court to review the authority of the bankruptcy court to enjoin the Kings County state action was wrong. There should have been a de novo review of the bankruptcy court's authority to violate the Anti-Injunction Act.

Kelly ignores this Court's reversal of the bankruptcy court's injunction against plaintiffs' pursuing the Supreme Court New York County action against LEAD II property. The implication is that post-Stern the bankruptcy court is not authorized to finally determine appellants' common law claims against the Belridge Group, Kelly or other defendants for their role in fraudulently conveying LEAD II's property the Reorganized Debtor did not own.

Finally, Kelly's implication that the Stern is limited to counterclaims alleging fraud is absurd. If a counterclaim that is already voluntarily in the bankruptcy court cannot be determined, a fraud claim cannot be involuntarily dragged from state court to be finally determined by a non Article III bankruptcy court. .

## CONCLUSION AND PRAYER FOR RELIEF

Kelly and the other defendants whose assets or property appellants are pursuing in common law state actions, who want to have a bankruptcy court decide those causes of action or want to be released, need to file a bankruptcy case on their own behalf (<u>In re Schmidt</u>. 453 B.R. 346 (8th Cir. 2011)). Following <u>Stern</u>'s proscription of final determination of state law claims by a non Article III court, appellants' appeal of the Western Texas district court referral of state law action to bankruptcy court that was dismissed by the Fifth Circuit #10-50407 as well as this Court for non-finality, should now be reinstated and the entire case remanded to state court.

Respectfully submitted,

*[signature]*

Israel Grossman
508 Avenue L
Brooklyn, New York 11230

9